

FILED

OCT 2 8 2016

Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MICHAEL P. DUNSMORE, | Cause No. CV 15-95-M-DLC-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| LEROY KIRKEGARD; ATTORNEY GENERAL OF STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on Michael P. Dunsmore's Petition for
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Dunsmore is a state prisoner
proceeding pro se.

For the reasons detailed below it is recommended that the petition be denied for
lack of merit and that a certificate of appealability be denied.

## I.     Factual and Procedural Background

The petition at hand is Dunsmore's seventh in this Court. The first five of
these petitions sought to challenge Dunsmore's 2007 conviction and sentence for
Failure to Register as a Sex Offender and the corresponding dismissal without
prejudice of one count of Incest.[1]

---

[1] *See Dunsmore v. Mahoney et al,* No. CV 08-71-BU-DWM-RKS (D. Mont. Nov. 18, 2011); *Dunsmore v. Law et al,* No. CV 09-02-DWM-RKS (D. Mont. Feb. 4, 2009); *Dunsmore v. State of Montana et* al., No. CV 09-41-DWM (D. Mont. July 14, 2009); *Dunsmore v. Law,* No. CV 09-58-DWM-JCL (D. Mont. April 24, 2009); *Dunsmore v. Mahoney et al,* No. CV 10-36-DWM (D. Mont. Aug. 5, 2010).

On November 7, 2013, following his plea of guilty, Dunsmore was convicted in the Eleventh Judicial District of Theft and Failure to Register as a Sex Offender. He filed his initial federal habeas petition in relation to these convictions in 2014. *See Dunsmore v. Kirkegard et al*, No. CV 14-73-DLC (Pet. filed Dec. 4, 2014). Dunsmore's petition was dismissed without prejudice for failure to exhaust his state court remedies. *See Dunsmore v. Kirkegard et al*, No. CV 14-73-DLC, Or. (D. Mont. Feb. 9, 2015).

Dunsmore filed the instant petition on July 27, 2015. (Doc. 1). He was then ordered to file an amended and consolidated petition. (Doc. 3). On October 9, 2015, Dunsmore complied. (Doc. 5). Dunsmore has since filed five addendums and supplements to his amended petition which the Court has also considered. See, (Docs. 10, 11, 23, 25, and 30).

### State Court Proceedings

Dunsmore has a substantial history of filing in the state courts, but only the matters pertinent to the instant petition and his 2013 convictions will be discussed herein.[2]

In December of 2013, following the trial court's pronouncement of sentence, but prior to entry of the written judgment, Dunsmore filed a petition for a writ of

---

[2] *See e.g. Dunsmore v. Eleventh Judicial District Court*, No. OP 15-0294, Or. at 1 (June 2, 2015)(observing that since 2008, Dunsmore has filed twenty-one matters with the Montana Supreme Court); see also, *State v. Dunsmore*, DA 15-0807, Or. at 2-3 (Mont. Aug. 16, 2016)(detailing the prolific nature of Dunsmore's filings).

habeas corpus in the Montana Supreme Court. *See Dunsmore v. Kirkegard*, No. OP 13-0844, Pet. (filed Dec. 19, 2013).[3] There, he argued that his conviction was invalid due to judicial misconduct, prosecutorial misconduct and ineffective assistance of trial counsel. The Montana Supreme Court denied his petition, finding that Dunsmore had failed to establish a prima facie claim. *Dunsmore v. Kirkegard*, No. OP 13-0844, Or. at 2 (Jan. 14, 2014). Specifically, Dunsmore alleged: the trial judge had a conflict of interest and erred by failing to recuse himself, the prosecutor failed to inform the defense that Dunsmore's ex-wife would be testifying at his sentencing hearing, and trial counsel's failure to object to Dunsmore's ex-wife's testimony constituted inadequate representation. *Id*. at 1-2. The Court found that all of the alleged errors were record based and, therefore, should be raised on direct appeal or challenged in a petition for postconviction relief, rather than in a habeas petition. *Id*. at 2. At the time of the opinion, Dunsmore had not yet filed a direct appeal.

Dunsmore then filed a direct appeal from both convictions arguing the trial judge, Judge Allison, should have been disqualified from Dunsmore's case in light of his personal knowledge of facts in dispute at the sentencing proceeding.[4] In a published opinion, the Montana Supreme Court affirmed the trial court. *State v.*

---

[3] All of the state court briefing and opinions cited herein are available at: https://supremecourtdocket.mt.gov (accessed Oct. 21, 2016).

[4] The two matters: *State v. Dunsmore*, Nos. DA 14-0087 and DA 14-0088, were consolidated on appeal.

*Dunsmore*, 2015 MT 108, ¶ 2, 378 Mont. 514, 347 P. 3d 1220. The Court noted that in Dunsmore's prior habeas proceeding he made an allegation regarding Judge Allison's conflict. Specifically, Dunsmore acknowledged having advised his attorney that Judge Allison had previously represented his daughter in a dependency and neglect proceeding and that he believed Judge Allison to be friends with his ex-wife's new husband who was seeking to adopt Dunsmore's daughter. *Id*. at ¶8.

The Court began by noting that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Id*. at ¶ 11, citing *FTC. V. Cement Institute*, 333 U.S. 683, 702 (1948). Further, the Court observed the states which had adopted the ABA Model Code of Judicial Conduct, as Montana did in 2008, "have instituted more rigorous standards for judicial disqualification than those required by due process." *Id*., citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 888-89 (2009). Thus, questions of disqualification are governed by the Montana Code of Judicial Conduct which provides more protection than due process requires and most disputes regarding disqualification are to be resolved without resorting to the Constitution. *Id*. at ¶12 (citations omitted).

Dunsmore argued that at the prior proceeding in which Judge Allison had represented his daughter, an allegation of incest had been lodged against Dunsmore. *Id*. at ¶ 14. In Dunsmore's view, this allegation of sexual impropriety

related to Dunsmore's overall character which was directly at issue in his sentencing hearing. Additionally, because Dunsmore's ex-wife testified to issues regarding Dunsmore's parenting, Judge Allison's prior involvement in the parenting case gave him personal knowledge which went to the heart of the conflict. *Id.* The State argued because Dunsmore and his attorney knew of the conflict, but chose not to seek recusal for tactical purposes, they should be precluded from raising the issue on appeal. *Id.* at ¶ 15.

The Court looked to Rule 2.12 of the ABA Model Code of Judicial Conduct and noted that the rule was silent as to when a claim of disqualification must be raised. The Court observed that a number of jurisdictions, as well as a majority of the federal courts, found timeliness to be a requirement when recusal is sought. *Id.* at ¶ 16-17. The Court adopted a timeliness requirement and held that a claim for disqualification of a judge is waived if not raised within a reasonable time after a party acquires knowledge of a potential basis for disqualification. *Id.* at ¶ 18. The Court held that such a requirement does not apply if a disqualification is based on bias or prejudice. *Id.* The Court held that Dunsmore's claim was not one of actual bias or prejudice and, thus, there was no exception to the timeliness requirement. Because Dunsmore's counsel appeared to make a tactical decision in not moving to disqualify Judge Allison, the Court concluded Dunsmore had waived his claim. *Id.* at ¶ 19.

On July 21, 2015, Dunsmore filed a petition for postconviction relief, but Dunsmore did not file a memorandum in support. Rather, he asked the trial court to obtain records from various courts including: Cause Nos. DR-07-454, DC-05-428, DC-12-358, and DC-12-359 from the Eleventh Judicial District, Flathead County; Montana Supreme Court actions DA-14-0087, OP-13-0884, and OP-15-0294; United States District Court Cause Nos. CV-14-73-H-DLC and 15-0040-H-DLC; and the Ninth Circuit Court of Appeals Cause No. 09-36022. Additionally, Dunsmore requested that counsel be appointed. *See Dunsmore v. State of Montana*, OP 15-0596, (Pet. filed Oct. 1, 2015).[5] Finally, Dunsmore requested that any judge before whom he had previously appeared be recused. *Id.* The postconviction court denied the petition due to Dunsmore's failure to present specific facts or records in support of his claim. *Id.* The Court held that Dunsmore's conclusory allegations did not provide adequate support for his petition and failed to satisfy the pleading requirements. The petition was denied on August 3, 2015. *Id.*

Dunsmore filed a pleading with the Montana Supreme Court following this denial which was construed as a petition for a writ of mandamus or, alternatively, for supervisory control. *Dunsmore v. State of Montana*, No. OP 15-0596, Or. at 1

---

[5] The Court was able to locate a copy of Dunsmore's postconviction petition, his "Motion to Order Amendments; Evidentiary Hearing, and Appointment of Counsel;" and "Substitution of Judge and Court;" as well as Judge Allison's Order denying postconviction relief. They are attached and filed with his petition for a writ of mandamus/supervisory control. See, *Dunsmore v. State of Montana*, No. OP 15-0596, Pet. (filed Oct. 1, 2015).

(Mont. Oct. 20, 2015). The Court held there was no requirement for the postconviction court to compile a record on Dunsmore's behalf and because Dunsmore failed to follow the statutory requirements he was not entitled to either mandamus or supervisory control. *Id*. at 2-3.

After filing the instant petition with this Court, Dunsmore apparently filed a motion to amend his sentence in the state court seeking removal of sex offender-related conditions. The trial court denied Dunsmore's motion; Dunsmore appealed. In affirming the trial court, the Montana Supreme Court noted that Dunsmore was not appealing from a final order and that the doctrine of res judicata barred Dunsmore's claim on appeal. *State v. Dunsmore*, DA 15-0807, Or. at 3-4 (Mont. Aug. 16, 2016). The Court noted that seven years prior, it had issued an order stating Dunsmore was barred from challenging his failure to register as a sexual offender following his 2007 conviction. *Id*. at 4. The Court went on to observe:

> Because of a 1989 Washington offense and a subsequent 1991 conviction, Dunsmore is required to register as a sexual offender as of 2007. His continual litigation has not changed this outcome, nor will any further litigation do so.

*Id*. Dunsmore's appeal was dismissed with prejudice and Dunsmore was advised that any future filings challenging either the 2007 or 2013 convictions would not be accepted unless Dunsmore had filed and been granted a motion for leave to file. *Id*. at 5.

## II. Dunsmore's Claims

The Court has reviewed the voluminous and often repetitive filings from Dunsmore and has discerned that he attempts to advance the following claims:

1. Dunsmore was denied a fair trial before an impartial tribunal, in violation of his right to due process, when Judge Allison failed to recuse himself (Doc. 5 at 4, ¶ 13A, 29-31; Doc. 10 at 1-2);

2. Dunsmore was denied his right to due process and confrontation when Judge Allison did not allow him to speak on his own behalf prior to imposition of sentence (Doc. 5 at 4, ¶ 13A; 31-34; 60; 61-62);

3. Trial Counsel was ineffective for: not moving to recuse Judge Allison, not "pulling" the plea agreement when the trial court refused to follow it, failing to properly advise Dunsmore of appellate procedure, and failing to object to biased comments made by Judge Allison (Doc. 5 at 5, ¶ 13B; 35-36; 60; 74);

4. Appellate counsel was ineffective for failing to file "new evidence." (Doc. 5 at 5, ¶ 13B ; 35-36; 73);

5. Dunsmore is unlawfully imprisoned in involuntary servitude in violation of his 6th, 13th, and 14th Amendment rights (Doc. 5 at 36-41);

6. The trial courts of Montana err by imposing impermissible conditions upon sexual offenders which bear no nexus to the crime, as does the Montana Supreme Court when it upholds the conditions (Doc. 5 at 44-46, 47-49, 49-51);

7. Dunsmore was unlawfully denied his right to a preliminary hearing and indictment by a grand jury (Doc. 5 at 53-55; see also, Docs. 5-3; 5-4; 5-5; 5-6);

8. Dunsmore's sentence was unlawfully manipulated by use of house arrest, GPS monitoring, and a persistent felony offender designation to coerce a plea agreement (Doc. 5 at 56);

9. Dunsmore's right to be free of double jeopardy was violated by ordering a psychosexual evaluation, when no sexual crime had been charged or committed in Montana (Doc. 5 at 57; 72);

10. It was discriminatory to order a presentence investigation for the State and not the defense and to order Dunsmore to pay for the evaluation (Doc. 5 at 58; 69);

11. Trial counsel was ineffective for allowing third party testimony and not disclosing the medication which was prescribed to Dunsmore at the time of the offense (Doc. 5 at 59; 67-68);

12. It was structural error to: prevent Dunsmore from testifying at his sentencing hearing, not inform a potential witness of the sentencing, present hearsay testimony. Counsel was ineffective in allowing a biased/prejudiced judge to preside (Doc. 5 at 60; 67-68; 74);

13. The Montana Supreme Court violated Dunsmore's rights by dismissing his state habeas action and directing him to pursue direct appeal and postconviction and the U.S. District Court violated Dunsmore's rights by "suspension" of his habeas petition. (Doc. 5. at 63);

14. The State of Montana violated its own constitutional prohibition on ex-post facto by the manner in which it handles plea agreements (Doc. 5 at 64)

15. The Clerk of the Montana Supreme Court violated Dunsmore's rights and access to the courts (Doc. 5 at 66);

16. The state courts have violated Dunsmore's state and federal constitutional rights by refusing to accept Dunsmore's filings (Doc. 30).

//

//

## III. Analysis

Although it appears that many of Dunsmore's claims are procedurally

defaulted,[6] it is apparent he is not entitled to relief on the merits of his claims.

Accordingly, it is more efficient to proceed to the merits. See, 28 U.S.C. §

2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997)(making detailed

analysis of constitutional issue despite outstanding question as to procedural bar).

### 1. Claim 1- Due Process Violation

Dunsmore contends he was denied his due process right to a fair trial when

Judge Allison failed to recuse himself. As noted, Dunsmore raised this issue in his

direct appeal arguing that Judge Alison violated both Dunsmore's constitutional

right to due process and the Montana Code of Judicial Conduct when he failed to

recuse himself. See, *State v. Dunsmore*, 2015 MT 108, Br. Appellant (filed Aug.

18, 2014). The Montana Supreme Court acknowledged the "axiomatic" principle

that due process requires a fair trial in a fair tribunal. *State v. Dunsmore*, 2015 MT

108, ¶ 11, 378 Mont. 514, 347 P. 3d 1220, citing, *Caperton v. A.T. Massey Coal

Co.*, 556 U.S. 868, 876 (2009). The Court further observed that "most matters

relating to judicial disqualification [do] not rise to a constitutional level." *Id.*

(citations omitted). The Court noted that by adopting the ABA's Model Code of

Judicial Conduct in 2008, Montana instituted more rigorous standards for judicial

---

[6] Claims 2, 3,4,6,7,8,9, 10, 11, 12, 14, and 15 all appear to be procedurally defaulted.

disqualification than those due process requires. *Id.* at ¶¶ 11-12. The Court went on to analyze and ultimately deny Dunsmore's claim of judicial bias by relying upon the Montana Code of Judicial Conduct.

AEDPA authorizes federal courts to grant a state prisoner's petition for a writ of habeas corpus when the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). If a state court decision fails to supply a basis for its reasoning, a court's duty under AEDPA does not disappear. See, *Harrington v. Richter*, 562 U.S. 86, 99 (2011)(presuming a state court's unexplained denial of prisoner's habeas petition constituted and adjudication on the merits); *Johnson v. Williams*,133 S. Ct. 1088, 1096 (2013)(applying the *Richter* presumption to a state-court decision that addressed some, but not all of a defendant's federal claims). Thus, the burden rests with Dunsmore to show that there was no reasonable basis for the Montana Supreme Court to deny him relief. *Richter*, 131 S. Ct. 1t 784. "[W]hen the state court does not supply reasoning for its decision, we are instructed to engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable." *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014)(citations omitted).

While Dunsmore does not articulate exactly what he finds unreasonable relative to the Montana Supreme Court decision, see (doc. 10 at 1-2), he does explain his general claim. Dunsmore argues that because Judge Allison took part in a prior dependency and neglect case involving Mr. Dunsmore's daughter, Judge Allison acted as a party to the case. By then presiding over Dunsmore's criminal sentence, so his argument goes, Judge Allison violated federal mandates requiring recusal. (Doc. 5 at 29). Dunsmore posits that this unlawful act violated federal law and unfairly tipped the scales of justice. *Id.* Dunsmore asserts Ninth Circuit law does not require actual bias to support his violation, but that the potential for bias can be enough even when a judge does his best to be fair. *Id.* at 30. Dunsmore contends that Judge Allison was obligated to recuse himself due to his actions in the dependency and neglect case and also because he presided over a domestic relations case involving Dunsmore and his ex-wife. *Id.* at 30-31.

"The Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard" for a claim of judicial bias. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). This floor requires "a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* at 904-5. One does not need to prove actual bias to establish a due process violation, an intolerable risk of bias is sufficient. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986). Dunsmore is correct that

12

due process mandates a stringent rule that "may sometimes require recusal of judges 'who have no actual bias and who would do their very best to weigh the scales of justice equally' if there exists a 'probability of unfairness'" *Hurles v. Ryan*, 752 F. 3d 768, 789 (9th Cir. 2014)(citing *In re Murchison*, 349 U.S. 133, 136 (1955)). The circumstances and relationships between the parties must be considered when determining the potential for a probability of unfairness. *Id.*

The Montana Supreme Court considered the fact that Judge Allison had previously represented Dunsmore's daughter, wherein allegations of sexual impropriety were made against Dunsmore. *State v. Dunsmore*, 2015 MT 108, ¶ 14. The Court also considered Dunsmore's argument that because the allegations lodged against Dunsmore in that matter related to his overall character, which was, of course, at issue in his criminal sentencing, resulted in Judge Allison having personal knowledge of not only Dunsmore's character, but also his parenting abilities. *Id.* Additionally, testimony from Dunsmore's ex-wife at the sentencing hearing added to this personal knowledge. Ultimately, the Montana Supreme Court determined that the legitimacy of any concerns Dunsmore had relative to Judge Allison's personal knowledge and bias were undercut by the fact that he never made a timely motion for recusal. *Id.* at ¶ 16. The Court finds that rationale reasonable.

13

Moreover, Dunsmore has not established that Judge Allison's purported representation of his daughter or purported relationship with his ex-wife created a probability of unfairness. To the contrary, Judge Allison acknowledged in open court at the outset of Dunsmore's sentencing hearing that he was involved in the domestic relations case between Dunsmore and his ex-wife, that it had been several months since there had been a hearing in that matter, and that that case "[did] not have an impact on what his ultimate sentence would be." (Doc. 17-4:4-10). Later, Judge Allison reiterated that an unrelated interpersonal conflict between Dunsmore and his ex-wife, about which she testified, had no bearing on the sentencing. *Id.* at 45:19-23.

Judge Allison took pains to explain his main concerns about Dunsmore: Dunsmore had six prior felonies; Dunsmore still believed following his change of plea hearing that he could possess firearms; Dunsmore lacked respect for the law as evidenced by his commission of two new felonies within one year of being released from prison; and, Dunsmore had a criminal history spanning 30 years. *Id.* at 45-50. The Court concluded:

> Mr. Dunsmore, you've basically led a life of crime for 37 years and—and I just don't think society is safe with you on the outs. I think that the law is whatever you want it to be on any given day. And I do believe that you have the capacity for periods of time to be law abiding but when things don't go your way you are not. And I believe that as a result of that society is best served by your removal from our midst. I wish you the best and that concludes this matter.

*Id.* at 47: 16-24.

As illustrated by Judge Allison's rationale for imposing the sentence, it had nothing to do with the judge's perceived relationship to Dunsmore's daughter or ex-wife, but rather was a result of Dunsmore's own actions. Thus, there was a reasonable basis for the Montana Supreme Court to deny Dunsmore's federal due process claim. Dunsmore has not established under *Richter* that this decision was unreasonable.

### 2. Claim 2- Due Process and Confrontation Clause Violation

Dunsmore claims he was denied his rights to due process right and confrontation when Judge Allison did not allow him to speak on his own behalf prior to the imposition of sentence. Review of the sentencing transcript reflects the trial court sentenced Dunsmore without asking him if he wished to allocute on his own behalf. (Doc. 17-4 at 45-47).

Dunsmore asserts that while the trial court was addressing the allegation lodged against Dunsmore relative to the status of his gun rights, Dunsmore raised his hand in an effort to make a statement, to which the court responded, "it's my turn now." This is reflected in Judge Allison giving his rationale prior to the imposition of sentence:

> But as of May 30th when [Dunsmore] entered his pleas to felony theft and failure to register, he was a convicted felon simply awaiting sentence. So thinking that somehow his gun rights were restored, I'm –**it's my turn now**—when he in fact was a

newly convicted felon for the seventh and eighth time is real problematic as far as I'm concerned.

(Doc. 17-4: 3-9)(emphasis added). While the failure to ask Dunsmore if he wished to speak on his own behalf may have violated Mont. Code. Ann. § 46-18-115, the United States Supreme Court has not held that a criminal defendant has a constitutionally protected right to allocution at sentencing:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.

*Hill v. United States*, 368 U.S. 424, 428 (1962). See also, *Machibroda v. United States*, 368 U.S. 487, 489 (1962) (following *Hill*, the failure of a sentencing judge to inquire of the defendant if he personally wanted to make a statement on his own behalf could not be raised on collateral review).[7] Thus, Dunsmore's due process claim should be denied.

Dunsmore's claim he was denied his right to confrontation under the Sixth Amendment fails as a matter of law because the Confrontation Clause does not apply to sentencing proceedings. *United States v. Petty*, 982 F. 2d 1365, 1369 (9th

---

[7] Although the Ninth Circuit has called the scope and application of *Hill* into question, see e.g., *Boardman v. Estelle*, 957 F. 2d 1523 (9th Cir. 1992), the Supreme Court has not overruled or modified the rule announced in *Hill*.

Cir. 1993), amended by 992 F. 2d 1015 (9th Cir. 1993). Accordingly, this portion of the claim should also be denied.

### 3. Claim 3- Ineffective Assistance of Trial Counsel

Dunsmore alleges that trial counsel was ineffective for not moving to recuse Judge Allison, not "pulling" the plea agreement when it became apparent the trial court was not going to follow it, failing to properly advise Dunsmore of proper appellate procedure, and failing to object to biased comments by the trial court.

A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Consequently, Dunsmore must establish that trial counsel performed deficiently and show that the deficient performance resulted in prejudice to Dunsmore.

Dunsmore conceded that trial counsel had "full knowledge" of the history between Dunsmore and Judge Allison and determined that she would not make a motion for recusal. See, *Dunsmore v. Kirkegard*, OP 13-0844, Pet. at 6 (filed Dec. 19, 2013). In fact, trial counsel apparently considered it a good thing that Judge Allison had prior knowledge of Dunsmore's family law case. *Id.* at 7. Thus, counsel's decision not to seek the removal of Judge Alison was tactical in nature.

Strategic decisions, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland* at 690.

Dunsmore's argument relative to counsel failing to "pull" the plea agreement is wholly lacking in merit. Dunsmore signed the plea agreement. In so doing, he acknowledged that the Court was not bound by the agreement. (Doc. 17-8 at 3, ¶ 12). Further, he acknowledged he could be sentenced up to the maximum punishment and that by entering into an agreement, the prosecutor was bound to make a specific recommendation, but the court was not bound to follow any such recommendation. Dunsmore also agreed the ultimate sentence to be imposed was within the sole discretion of the sentencing judge. *Id.* at 4, ¶¶ 14, 15.

Dunsmore's argument relative to counsel failing to advise him of appropriate appellate procedures is equally unavailing. Prior to entry of written judgment, Dunsmore filed a pro se petition for habeas relief. The Montana Supreme Court advised him that the proper channel to pursue was either a direct appeal or a petition for postconviction relief. *Dunsmore v. Kirkegard*, OP 13-0844, Or. at 2 (Mont. Jan. 14, 2014). Following the entry of written judgment on the criminal cases, a Notice of Appeal was timely filed on Dunsmore's behalf by the Office of the Appellate Defender. See, *State v. Dunsmore*, 2015 MT 108, Not. (filed Feb. 6, 2014). Thus, whether or not trial counsel specifically informed him of the proper appellate procedures, it is clear from the record that the Montana

Supreme Court did. Even assuming Dunsmore were able to establish deficient performance by trial counsel, he cannot establish prejudice, however, because, he timely filed a direct appeal.

Finally, Dunsmore faults trial counsel for failing to object to a comment made by Judge Allison about the state's removal of the persistent felony offender designation and also that trial counsel "allowed" the Judge to question the State's witness, Dunsmore's ex-wife, Jodie Radabah. In providing a rationale for his decision not to follow the recommendations of counsel, Judge Allison observed that Dunsmore had a criminal history spanning thirty years and that within one year of being released from prison, Dunsmore committed two new offenses that constituted his seventh and eighth lifetime felonies. The trial court observed that Dunsmore "is, for all practical purposes, a persistent felony offender even – and that notice was filed but withdrawn as part of the plea agreement." (Doc. 17-4 at 46). It is unclear exactly what Dunsmore believes is objectionable about this statement. It was consistent with Judge Allison's prior observation that Dunsmore had a prior felony criminal history and with the fact the State had withdrawn the designation. Whether or not the trial court agreed with the State's decision to remove the designation, is not a matter of import. That specific charging decision is left to the sole discretion of the prosecutor. See, MCA § 46-13-108. Even assuming, however, trial counsel should have objected to this comment, it is

unclear how Dunsmore believes an objection would have changed the outcome of the sentencing. Dunsmore has not established either deficient performance or prejudice relative to this claim, thus, it fails. *Strickland*, 466 U.S. at 691.

Lastly, Dunsmore does not explain on what basis he believes trial counsel should have objected to the sentencing judge asking questions of his ex-wife. Apparently, she did not support the recommendation made by the State in the plea agreement. Accordingly, the prosecutor gave her the opportunity to address the Court, but advised Ms. Radabah the prosecutor was bound by the sentence it had agreed to recommend in the plea agreement. (Doc. 17-4 at 31-32). Radabah was then allowed to testify in a narrative fashion. Judge Alison did ask questions of Radabah, *id*. at 35- 37, but defense counsel was also given the opportunity to cross-examine her. *Id*. at 38- 40. Again, even assuming that Dunsmore could establish the first prong of *Strickland*, there is no indication he was prejudiced. Claim 3 should be denied in its entirety for lack of merit.

## 4. Claim 4- Ineffective Assistance of Appellate Counsel

Dunsmore alleges appellate counsel provided ineffective assistance by failing to mount a constitutional challenge to the manner of charging criminal cases in Montana by information rather than by a grand jury indictment followed by a preliminary hearing (Doc. 5 at 35; doc. 5-7 at 4, 6). Dunsmore's appellate counsel, Greg Hood, responded to Dunsmore's request by explaining the charging

process in Montana is authorized by statute, that such process has been held to be constitutional, and that the Montana Supreme Court has denied the same claim many times before. (Doc. 5-7 at 7)(citing, *Beck v. Washington*, 369 U.S. 541 545 (1962).

Effective legal assistance does not mean that appellate counsel must appeal every question of law and raise every non-frivolous issue request by a defendant. *Jones v. Barnes*, 463 U.S. 645, 751054 (1983). As evidenced by the correspondence, Hood deemed the issue to be frivolous and declined to include it in Dunsmore's appeal. This was an objectively reasonable decision by appellate counsel. Dunsmore cannot establish appellate counsel performed deficiently; this claim should be denied for lack of merit.

## 5. Claim 5- Unlawful Imprisonment/Involuntary Servitude

Dunsmore claims he was unlawfully imprisoned and placed in a position of involuntary servitude in violation of the 6th, 13th, and 14th Amendments. Mr. Dunsmore was granted parole on June 27, 2016, and is no longer in custody.[8] While the Court is highly dubious that he was ever placed in a position of involuntary servitude, Mr. Dunsmore is unable to meet the case-or-controversy requirement for the justiciability of his claim under Article III, Section 2 of the United States Constitution. This claim is now moot and should be denied.

---

[8] See, https://app.mt.gov/conweb/Home/OffenderNumber/39245 (accessed October 20, 2016).

### 6. Claim 6- State Imposition of Sexual Offender Conditions

Mr. Dunsmore claims the courts of Montana err by imposing and upholding impermissible conditions upon sexual offenders which bear no nexus to the underlying crime. Federal courts must entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 22 U.S.C. §2254(a). This claim fails to allege a federal constitutional violation and the Court cannot perceive any constitutional basis for the claim. The claim should be denied as meritless.

### 7. Claim 7- Denial of Indictment by Grand Jury

Mr. Dunsmore claims a Fifth Amendment violation because he was denied his right to a preliminary hearing and indictment by a grand jury. This argument lacks any substantive merit. The Fifth Amendment Grand Jury Clause was not incorporated by the Fourteenth Amendment to apply to the states. *Branzbug v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Beck v. Washington*, 369 U.S. 541, 545 (1962). As he was advised by his appellate attorney, there was nothing unconstitutional or defective about the manner in which the State of Montana charged Dunsmore. This claim is frivolous and should be denied.

### 8. Claim 8- Coercion of Plea

Dunsmore contends that the state unlawfully manipulated him, via the use of home arrest, GPS monitoring, and a potential persistent felony offender designation to coerce a plea agreement. The record before this Court belies Dunsmore's claim.

Dunsmore agreed to plead guilty to felony theft and to enter an Alford plea for failure to register as a sexual offender. (Doc. 17-3 at 5:22-25). During the change of plea hearing Dunsmore acknowledged that he had entered into and signed a plea agreement (*id.* at 7), that he was satisfied with the services of his attorney (*id.*), that he had had ample time to review the agreement (*id.*), that he was clear headed (*id.* at 8), that he was willingly giving up his right to have a jury trial and confront his accusers (*id.*), and that the state intended to drop the persistent felony offender designation as part of the plea agreement (*id.* at 11). Further, Dunsmore acknowledged that he was not threatened, coerced, forced, intimidated, or influenced to enter the plea. (Doc.17-8 at 3, ¶ 9). He acknowledged that he entered into the plea agreement freely and voluntarily. *Id.* at ¶ 10.

The Court does not find the federal cases Dunsmore cites to be applicable to his argument. Thus, it is unclear exactly what federal constitutional violation Dunsmore asserts. The record, however, as evidenced by Dunsmore's own signature and testimony, illustrates that he entered into a plea agreement with the

state voluntarily, knowingly, and of his own free will. This claim should be denied for lack of merit.

### 9. Claim 9- Double Jeopardy Violation

Dunsmore asserts a double jeopardy claim based upon the fact the trial court ordered him to undergo a psychosexual evaluation when he had not been charged with the commission of a sexual crime in Montana. The double jeopardy clause prevents the state from "punishing twice, or attempting a second time to punish criminally, for the same offense." *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997). Dunsmore's claim, however, is not one of a constitutional nature.

When an individual is convicted of Failure to Register as a Sexual Offender under §46-23-507 MCA, Montana law requires a presentence investigation, which includes a psychosexual evaluation, to be completed. See, MCA § 46-18-111(b). Moreover, all costs of the evaluation must be paid by the defendant, unless it is determined by the court that the individual is indigent. *Id*. In Dunsmore's case, the evaluation certainly did not hurt him. Dr. Scolatti recommended that Dunsmore be designated a low risk to reoffend and opined that the recommended disposition contained in the plea agreement was appropriate. (Doc. 18-1 at 25-26). For this Court's purposes, however, the outcome of the evaluation matters not. This is a matter of state law that cannot be turned into one of constitutional import by merely referencing the double jeopardy clause. The claim should be denied.

## 10. Claim 10- Discrimination/Presentence Investigation

Dunsmore argues that he was discriminated against when a presentence investigation was ordered for the state and not the defense. Although the claim does not entirely make sense, it fails for the same reason set forth above in relation to Claim 9. The requirement of a presentence investigation is set by Montana statute. See, MCA § 46-18-111. There is no federal constitutional violation alleged; this claim should be denied.

## 11. Claim 11- Ineffective Assistance of Trial Counsel

Dunsmore claims trial counsel was ineffective for not disclosing the medication which was prescribed to Dunsmore. It seems that Dunsmore is attempting to argue that he could not have formed the requisite mental state to commit the acts alleged due to the ingestion of prescription medication. (Doc. 5 at 59). If this was a defense Dunsmore wished to pursue at trial, he certainly could have done so. The reality is, however, is that he elected to enter into a plea agreement. The argument is unavailing.

Additionally, Dunsmore provided information to the PSI-writer about the medication he was taking at the time of the offense and explained it created an "emotional roller coaster" for him. See e.g., (Doc. 18-2 at 5). Thus, contrary to Dunsmore's belief, Judge Allison was provided with information about

Dunsmore's medication prior to the imposition of sentence. Dunsmore has failed to establish a federal constitutional violation. This claim should be denied.

## 12. Claim 12- Structural Error

Dunsmore poses the claim as follows: "Is it structural error to prevent Defendant to testify, witness not knowing of sentencing, here-say (sic) testimony, ineffective counsel for failing to order a Bias (sic), prejudice (sic) judge to recuse himself when he would not do so himself and conspiracy between Judge, Prosecutor and Defense counsel to same judge to proceed." (Doc. 5 at 60).

To the extent that Dunsmore attempts to raise a challenge to Judge Allison presiding over his case, that claim has been addressed above, *supra* 10-15. To the extent that Dunsmore claims his rights were violated when he was prevented from allocuting on his own behalf, that has also been referenced above, *supra* 15-16. To the extent that Dunsmore advances a claim of ineffective assistance of trial counsel for neglecting to seek to recuse Judge Allison, that claim, too, has been addressed, *supra* at 17.

Dunsmore also seems to allege that hearsay testimony is not allowed during a sentencing hearing, however, he is mistaken. A court is allowed to consider facts and circumstances that would not necessarily be admissible at trial, including hearsay statements, so long as the statements given have "some minimal indicia of reliability." *United States v. Berry*, 258 F. 3d 971, 976 (9th Cir. 2001). Dunsmore

does not state exactly what hearsay testimony he takes issue with or how it was unreliable. Additionally, it is unclear exactly how Dunsmore believes the parties and judge conspired against him. In short, he fails to allege a federal constitutional violation. The claim should be denied in its entirety.

### 13. Claim 13- Violation by the Montana Supreme Court

Dunsmore alleges a violation occurred when the Montana Supreme Court denied and dismissed his state petition for a writ of habeas corpus and instructed him to pursue a direct appeal and postconviction, in turn, resulting in an inability for Dunsmore to file a subsequent habeas petition. It is unclear exactly what constitutional claim Dunsmore is attempting to advance.

The fact that he was directed by the Montana Supreme Court to file a direct appeal or seek postconviction relief, presents a state law procedural issue, not a federal claim. The record also reveals Dunsmore did, in fact, file a direct appeal and subsequently sought relief via a postconviction petition. Moreover, although his first federal petition was dismissed without prejudice as unexhausted, this Court is addressing the merits of his present petition. Dunsmore has not established a federal constitutional violation. To the extent that he attempts to contest the application of state appellate law and procedure to his case, such a challenge is not cognizable in federal habeas. See, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)("[F]ederal habeas corpus relief does not lie for errors of state law[.]").

### 14. Claim 14- Ex post facto Violation

Dunsmore contends the State of Montana violated its own constitutional prohibition on ex-post facto relative to the way it handles plea agreements This challenge to purported state procedures, likewise, is not cognizable in federal habeas. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). It should be denied.

### 15. Claim 15- Violation of Access to the Courts

Dunsmore alleges the Clerk of Montana Supreme Court violated his rights by apparently failing to file Dunsmore's request to discharge his appellate defender and file new evidence in his appeal and, purportedly, denying Dunsmore's state writ of habeas corpus.

While it is true that Dunsmore attempted to file his "new evidence" challenging the lack of an indictment by grand jury in his case and the criminal charging process generally in Montana state courts (doc. 5-7 at 9- 12), the Clerk of the Supreme Court returned the documents because Dunsmore was represented by counsel. *Id*. at 13. Dunsmore then attempted to remove his counsel so he could proceed pro se with this argument. *Id*. at 14- 16. The documents were again returned and Dunsmore was advised of the proper procedure he would need to follow to remove counsel. *Id*. at 17. Apparently, the Montana Supreme Court issued its opinion affirming the lower court before Dunsmore filed the motion to remove counsel. *Id*. at 19. The record reveals that Dunsmore was not denied

access to the Court, rather he was simply required to follow the applicable state law procedures. This claim should be denied.

## 16. Claim 16- Constitutional Violation for Failure to Accept Filings

Finally, Dunsmore argues that the state trial court has violated his state and federal constitutional rights by refusing to accept further filings challenging the 2013 convictions and that the Montana Supreme Court has endorsed and adopted this policy as evidence by their opinion in *State v. Dunsmore*, DA 15-0807, Or. (Mont. Aug. 16, 2016). This Court has access to and has reviewed the pleadings and order in *State v. Dunsmore*, DA 15-0807.

In relation to the 2013 convictions, Dunsmore filed: a state habeas petition, *Dunsmore v. Kirkegard*, No. OP 13-0844, Pet. (filed Dec. 19, 2013); a direct appeal, *State v. Dunsmore*, 2015 MT 108, 378 Mont. 514, 347 P. 3d 1220; a postconviction petition, See, *Dunsmore v. State of Montana*, OP 15-0596, (Pet. filed Oct. 1, 2015); a writ of mandamus/supervisory control, *Dunsmore v. State of Montana*, No. OP 15-0596, (Mont. Oct. 20, 2015); and a motion to amend his 2013 sentence and an appeal therefrom, See, *State v. Dunsmore*, DA 15-0807, Or. (Mont. Aug. 16, 2016). The record reveals that, contrary to his assertion, Dunsmore has had ample opportunity to challenge his 2013 conviction. The fact that he has not received the relief he sought, does not convert this matter into one of constitutional import.

Moreover, the state courts of Montana have the ability to place limitations on an individual who exhausted all of the available avenues for relief or who is deemed to be a vexatious litigant. "The right to access the state's legal system is not an absolute right and may be reasonably restricted in light of a 'legitimate state interest.'" *Motta v. Granite County Com'rs*, 2013 MT 172, ¶ 18, 370 Mont. 469, 304 P. 3d 720, citing *Peterson v. Great Falls Sch. Dist. No. 1 & A*, 237 Mont. 376, 380, 773 P. 2d 316, 318 (1989). Likewise, the Ninth Circuit allows for pre-filing orders to be entered against certain litigants. See, *Molski v. Evergreen Dynasty Corp.*, 500 F. 3d 1047 (9th Cir. 2007).

A pre-filing order has been put into place for future filings Dunsmore wishes to make. If Dunsmore is able to identify an issue and make a preliminary showing that the issue has merit, he is not barred from filing. *State v. Dunsmore*, DA 15-0807, Or. at 5 (Mont. Aug. 16, 2016). He is required to first obtain leave from Court before the matter will proceed. *Id.* Dunsmore has not established a violation of a federal right. This claim, too, should be denied.

### IV.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Mr. Dunsmore has not made a substantial showing of denial of a constitutional right. There are no close issues or reasons to encourage further proceedings.

## RECOMMENDATION

1. Mr. Dunsmore's amended petition (doc. 5) should be DENIED for lack of merit.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Dunsmore may object to this Findings and Recommendation within 14 days.[9] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

---

[9] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

novo determination by the district judge and/or waive the right to appeal.

Mr. Dunsmore must immediately notify the Court of any change in her mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 28th day of October, 2016.

Jeremiah C. Lynch
United States Magistrate Judge